Hershfang, J.
Introduction
In this suit on a note, the trial judge found for Defendant-Appellee Robert Skloff (“Defendant”). Plaintiff-AppellantEgil Stigum (“Plaintiff’) seeks to overturn thatfind-ing. Because Plaintiff hasnotproperly preserved his rights under the applicable appellate rules, we dismisshisappeal. Inany event, there isadequate evidence to support the trial judge’s factual conclusions.
The Requirements Of The District/Municipal Court Appellate Division Rules
To understandwhywe conclude thatPlaintiffhasnotproperlypreservedhisrightto appeal, andwiththehopedoingsomayavoidsimilarmistakesinthefuture, we turnfirst to a summary explanation of those requirements.
On the completion of trial, Plaintiff had two basic vehicles for bringing claims before us, by submitting a written request for rulings of law, and by a claim that the evidence does not warrant a finding for Defendant. More on these later. To understand the basis and limits of these choices, itseems critical to note and emphasize a key difference between trials of civil, non-jury cases in this court department, the Boston Municipal Court Department (“BMC”) and in our sibling courts of the Dis-trictCourtDepartment(“DistrictCourts”),fromtrialsintheothertrialcourtdepart-ments. That difference is emb odied and reflected in Mass. R. Civ. P., Rule 52 (“Rule 52”), which requires written findings of fact by the trial judge. As the heading to paragraph (a) of Rule 52 notes, however, written findings of fact are required only in “Courts OtherThan District Court,” “District Court” being defined in Mass. R. Civ. P., Rule 1, as including the BMC. Thus, to repeat an oft-ignored basic difference, judges in neither the BMC nor the District Courts are bound by the written-findings-of-fact requirement in cases tried without a jury that attaches to trial judges elsewhere.[1] Instead, BMC and District Court civil trial judges are covered by Mass. R. Civ. P., Rule 52(c), under which "... the court may find the *64 facts specially and state separately its conclusions of law thereon.”[2]
Why do judges of the BMC and District Courts remain excluded from the “written findings” requirements of Rule 52(a), a long-standing distinction which was carried over despite an overhaul of appellate division appeal procedures effected within the first half of the 1990s? The “Reporter’s Notes” explains:
The revision of paragraph (a) [effected in 1996] evidences the decision not to follow the [Mass. R. Civ. P. requirement of] an automatic set of judicial findings of fact and conclusions of law in every case tried without a jury. Rather, this rule provides that the court may make detailed findings of fact and rulings of law, and is required, as has been true in the past, to make rulings of law in response to requests for rulings submitted by any of the parties to the litigation. This procedure, and the whole mechanism of appeal to the Appellate Division of which it is the foundation, is set forth in Rule 64 of these rules. [Since July 1, 1994, appeal to the Appellate Division has been governed by the District/Municipal Courts Rules for Appellate Division Appeal],
The decision to favor the present appeal mechanism over the [Rule 52(a)] approach in cases tried without a jury is based on several factors. Important among these is the fact that in many of the District Courts, and particularly in the Boston Municipal Court, a judge will frequently hear a large number of civil cases in the course of a single day, and on successive days, and the fact that most of these cases turn on questions of fact, which in turn relate to questions of credibility. If there were a mandatory requirement that written findings and rulings be made in each case under such circumstances, this would impose a tremendous burden on the courts. Even if adequate stenographic assistance were available to these courts for this purpose (which is not the case), this would require a large expenditure of judicial time in preparing such findings where the element of credibility would be decisive, and would merely bring into play the provisions of [Rule 52(a) and (c) (italicized in footnotes 1 and 2, above)] that ‘[Bindings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.’ In short, the present appellate mechanism is well suited to current District Court jurisdiction, and is well understood by those members of the bar familiar with District Court practice.
There is another important, very practical reason, as well. Each party can preserve the right to a jury trial simply by stating a claim for trial by jury on the complaint or answer. Shields v. LeBrecht, 345 Mass. 354, 355 (1963) (A typewritten notation on the back of the writ regarding plaintiffs desire for a jury trial was sufficient to notify defendant of such desire.); Mass. R. Civ. P., Rule 38(b). Having done so, even after an adverse judgment in a trial without a jury, indeed even after an adverse judgment is affirmed on appeal to the appellate division, the losing *65 party retains the right to a whole new trial before a jury. See Third Nat’l Bank of Hampden County v. Continental Ins. Co., 387 Mass. 1001, 1001-02 (1982) (After plaintiff received notice of the District Court’s decision and the appellate division’s dismissal of plaintiffs report, plaintiff still had an opportunity to request a trial in Superior Court before appealing the dismissal of the report to the Supreme Judicial Court.); see also Sroczynski v. Shell Oil Co., 394 Mass. 222, 224 (An appellate division decision is not final when retrial is available in the Superior Court under G.L.c. 231, §102C.). Whenever such an appeal is taken, the time spent by the judge in preparing written findings of fact adequate to satisfy the Rule 52 requirements would essentially have been wasted. There are obviously better ways to make use of limited judicial resources.
But just because judges of the BMC and District Courts are not bound to publish written findings is no reason they should say nothing about their views of the case. An unexplained finding for one party or the other may suffice to reflect the trial judge’s thinking in the vast majority of single-issue cases. Was the defendant negligent? Was it the defendant who signed the contract? The judgment, after all, includes the presumption of a finding of all facts necessary to support it. Jones v. Clark, 272 Mass. 146, 149 (1930) (‘The general finding of the trial judge imports a finding of all subsidiary facts and the drawing of all permissible inferences in its support.”). As the issues in the case multiply or become more complex, however, an unexplained finding is more mystifying. If the parties, winner and loser, do not yearn for some sense of why the judge decided as s/he did, most surely wonder and would like to know. Judges are thoughtful in communicating their views in a way that satisfies the parties’ need. Without some explanation, the parties would be left to guess at what the judge was thinking. We believe, therefore, that judges should be commended for expressing their views when those views would otherwise be unclear or unknowable. What effect a judge’s expression should have for appellate purposes we will discuss later.
For now, however, and given this background, we return to the two basic appellate alternatives available to Plaintiff. With fact-finding thus wholly within the judge’s authority to determine and not publish, Plaintiff had the right and opportunity by a request for rulings to require that the judge commit to the legal principles involved in the resolution of this case by accepting or denying Plaintiffs proffered statements of legal principles. Or, put differently, the timely filing of a request for rulings serves to test the trial judge’s legal reasoning while preserving the right to have it reviewed on appeal. Hogan v. Coleman, 326 Mass. 770, 772 (1951). The requirement that the trial judge commit to the stated principles of law and the cited supporting case law also serves to remind, alert or educate the trial judge as to the legal principles and case law the requesting party considers germane.
The rule that evidences those requirements with respect to the BMC and the District Courts is Mass. R..Civ. P., Rule 64A (“Rule 64A”). In underscoring and explaining the critical need for appropriate requests for rulings as a condition to preserving appellate rights, subsection (a) of Rule 64A says this:
RULE 64A. REQUESTS FOR RULINGS OF LAW IN DISTRICT COURT
(a) In General. In District Court [and BMC] proceedings, requests for rulings of law shall be in writing and shall be presented to the court before the beginning of any closing arguments unless special leave is given to present requests later. Each request shall concisely present a single issue of law and shall be sequentially numbered. Requests shall not be redundant or unreasonable in number. With the exception of requests addressed to the sufficiency of the evidence, each request shall also concisely state the relevant principle of law and should be supported *66 by appropriate legal citation.
Plaintiff clearly understood this requirement because, following the trial of this case, Plaintiff timely submitted forty-four separate requests for rulings of law. (Those requested rulings are set forth in Appendix A, following this opinion). However, stating that the number was “unreasonably excessive” and that “the court is not required to select and rule upon particular requests for rulings,” the trial judge declined to rule on any of them. As was just quoted, subsection (a) of Rule 64A requires that “ [r] equests shall not be redundant or unreasonable in number.” The trial judge here, relying on Stella v. Curtis, 348 Mass. 458, 460 (1965) and Green v. Blue Cross and Blue Shield of Massachusetts, Inc., 1996 Mass. App. Div. 165, 167-71, concluded, as had the trial judge in the cited Green v. Blue Cross and Blue Shield of Massachusetts, Inc. case, that he had the authority to strike all of Plaintiffs requests and did so.
Of course, Plaintiff had the right to contest that ruling. Indeed, in his notice of appeal, Plaintiff does so; the last of his list of seven issues of law presented for review is “[wjhether the Court must rule on some or all of the plaintiffs requests for rulings of law.” Plaintiff thus initially preserved this issue of law for appellate review, satisfying the requirements of District/Municipal Courts R.A.D.A., Rule 3(c) (2), that the notice of appeal contain “a concise statement of the issues of law presented for review.” Strangely, or perhaps viewing it as unnecessary or hopeless to do so, however, Plaintiff failed to address this issue in his appellate brief, and we consider the issue as waived. Dist/Mun. Cts. R.A.D.A., Rule 16(a) (4) (The Appellate Division need not pass upon questions or issues not argued in the brief.”). Nor is it for us to second-guess the trial judge’s exercise of discretion. Scannell v. Ed. Ferreirinha & Irmao, Lda., 401 Mass. 155, 160 (1987). Plaintiff, having thus forsaken the issue, his request for rulings is not before us. Meyer v. Wagner, 429 Mass. 410, 411 n.1 (1999).
“On All the Evidence ...”
Having thus failed to preserve his appellate rights by way of requests for rulings of law, Plaintiff sought to rescue his appeal at oral argument by claiming that in this case on all the evidence there could be no finding for Defendant. Here, too, Plaintiffs claim fails. Rule 64A does, in subsection (b)(2), provide for appeals on insufficient evidence. Indeed, precisely to help litigants avoid Plaintiffs situation, that subsection expresses the language to be used to ensure that this right is preserved. It says this:
(b) Requests for Rulings on Sufficiency of Evidence.
(2) In District Court proceedings, to obtain a ruling that the evidence is insufficient as a matter of law to permit a general finding in the opposing party’s favor, the requesting party shall file a written request for such ruling substantially in the following language: The evidence does not warrant a finding for (opponent party) and therefore a finding for (requestor) is required as a matter of law.’
As the “Reporter’s Notes” says, “[b]y prescribing specific mandatory language for ‘warrants’ requests [which theretofore had chronically plagued appeals of requested rulings], and defining the meaning of those requests, the rule seeks to minimize this problem.” In this respect, it is remarkable that of Plaintiffs forty-four requested rulings, even had they survived the judge’s ruling striking them, none followed this simple, straightforward requirement of the quoted subsection (b)(2) of Rule 64A.
We turn now to the meaning we ascribe to the judge’s writing. The trial judge’s two-page, double-spaced “Memorandum of Decision and Order” (“Memorandum”) is annexed as Appendix B to this opinion. It followed a trial that it took 166 *67 pages to transcribe. The trial involved over a dozen exhibits and charts and touched on complicated contract, Uniform Commercial Code and bankruptcy matters. Thus, as we read the trial judge’s Memorandum, neither in title, form nor comprehensiveness does it begin to meet the standards of Rule 52(a) or 52(c) that the judge “find the facts specially and state separately [his or her] conclusions of law thereon ...” Rather, we view that Memorandum as simply the trial judge’s effort to outline some of his views on the evidence and the law, precisely the kind of message of the trial judge’s views to the parties and counsel that is noted earlier as a desirable practice.
To read the trial judge’s Memorandum as an adequate basis for this appeal would encourage end runs around the applicable rules of appellate procedure by recognizing appeals based on a claim of the inadequacy of a written memorandum short of those contemplated in Rule 52 that some judges voluntarily submit. More important, even, is that we would thus discourage those voluntary submissions, thus losing the educational benefit they provide. As Chief Justice Rugg noted in somewhat parallel circumstances, “[findings of fact not infrequently are made in more or less detail by a trial judge and the reasons stated for the information of parties and counsel, but that is a practice of convenience.” Ashapa v. Reed, 280 Mass. 514, 516 (1932).[3]
In this respect we may differ somewhat from at least some of our siblings in the appellate division of the District Courts. For example, Fontaine v. Hunter, 1994 Mass. App. Div. 175 has spawned a line of cases that rely on this quote:
Although a [district court] judge’s ultimate findings of fact can import the requisite findings of subsidiary fact necessary to support those ultimate findings, [citations omitted], a judge must make findings sufficient to be satisfied that he has dealt fully and properly with all the issues and that the parties involved and the appellate courts may be fully informed as to the basis of the judge’s decision.
Id. at 175.
Cited in support of this far-reaching proposition are Schrottman v. Barnicle, 386 Mass. 627 (1982) and Cormier v. Carty, 381 Mass. 234 (1980). However, Schrottman is a case tried in the Superior Court Department, and Cormier in the Probate and Family Court Department, each of which, of course, unlike the BMC and District Courts, are subject to the written findings mandate of Rule 52(a).
Judge’s Finding Supported In Record
Finally, even were we to ignore Plaintiffs failure to abide by the cited rules of appellate procedure and we were to deal with the merits of the case, Plaintiff would fare no better. For our purposes, it suffices to point out that among the trial judge’s reasons for finding for Defendant is his conclusion (see Appendix B) that “material misrepresentations were made by the Plaintiff for the purpose of inducing the Defendant to sign” the about $36,000 note on which Plaintiff sued. Not so, Plaintiff contends. If there was any misstatement, it concerned action to be taken by Plaintiff in the future, and this, Plaintiff asserts, is not adequate to support a misrepresentation claim. In support, Plaintiff cites the language in the trial judge’s Memorandum that Plaintiff and his former partner, Todd, “represented to defendant that he [defendant] would be removed” from the existing *68 note (“Bank Note”)- Plaintiff further contends that there was no other evidence of any alleged misrepresentation established. In this respect, aside from the perhaps overly persnickety reading of tenses in the trial judge’s Memorandum, Plaintiff misstates the record. Defendant expressly testified that Plaintiff told him he was taken off the Bank Note. Not only was this statement untrue, but because the Bank Note was not retired as Defendant expected, with Plaintiff and Todd in the meanwhile having filed for bankruptcy, Defendant was left “holding the bag” alone. He had to pay some $40,000 to discharge the Bank Note.
Thus, for the stated procedural and substantive reasons, Plaintiffs appeal is dismissed.
Appendix A
COMMONWEALTH OF MASSACHUSETTS SUFFOLK, SS MUNICIPAL COURT OF THE CITY OF BOSTON CIVIL ACTION NO. 238741
EGIL STIGUM, ) PLAINTIFF ) ) ) ) ROBERT SKLOFF, ) DEFENDANT ) _) PLAINTIFF’S REQUEST FOR RULINGS OF LAW
Now comes the Plaintiff, Egil Stigum, by his counsel, and hereby requests the following rulings of law:
1. The evidence warrants a finding for the Plaintiff that the Defendant signed, executed and delivered a note (“Note I”) payable to the Plaintiff, Egil Stigum, and Mr. Robert Todd; dated September 30,1989; and in the amount of $36,286.62.
2. The evidence warrants a finding for the Plaintiff that Mr. Robert Todd assigned his interest in Note I to the Plaintiff, Egil Stigum.
3. To the extent that he is a payee of Note I, the Plaintiff, Egil Stigum, is a holder of Note I. Mass. Gen. L. Ann. ch. 106, §1-201(20) (West 1990).
4. To the extent that he is a transferee-in-possession as to Mr. Todd’s interest in Note I, the Plaintiff, Egil Stigum, has the rights of a holder of Note I. Mass. Gen. L. Ann. ch. 106, §3-201(1) (West 1990); Duxbury v. Roberts, 388 Mass. 385 (1983).
5. The evidence warrants a finding for the Plaintiff that the Defendant signed, executed and delivered a note (“Note II”) payable to the Plaintiff, Egil Stigum; dated September 30,1989; and in the amount of $1,851.67.
6. As the payee of Note II, the Plaintiff, Egil Stigum, is the holder of Note II. Mass. Gen. L. Ann. ch. 106, §1-901(20) (West 1990).
7. By failing in his Answer to the Amended Complaint to deny the genuineness of his signatures on Note I and Note II, the Defendant admitted the genuineness of his signatures on Note I and Note II. Mass. Gen. L. Ann. ch. 106, §3-307(1) (West 1990); Mass. R. Civ. P. 8(b).
8. As the holder of Note I or a person with the rights of a holder of Note I, the Plaintiff, Egil Stigum, has made out a prima facie case to recover on Note I. Mass. Gen. L. Ann. ch. 106, §3-307(2) (West 1990); Worcester Bank & Trust Co. v. Holbrook, 287 Mass. 228, 191 N.E. 425 (1934).
9. As the holder of Note II, the Plaintiff, Egil Stigum, has made out a prima facie case to recover on Note II. Mass. Gen. L. Ann. ch. 106, §3-307(2) (West 1990); Worcester Bank & Trust Co. v. Holbrook, 287 Mass. 228, 191 N.E. 425 (1934).
*69 10. The evidence warrants a finding for the Plaintiff that both Note I and Note II are supported by consideration.
11. The requirement of consideration is satisfied if there is either a legal benefit to the promissor or a legal detriment to the promisee. Marine Contractors Co., Inc. v. Hurley, 363 Mass. 280, 310 N.E.2d 915 (1974).
12. The evidence warrants a finding for the Plaintiff that the Plaintiff, Egil Stigum, did not delay enforcing his rights in Note I and Note II for an unreasonable period of time.
13. The evidence warrants a finding for the Plaintiff that the Defendant, Robert Skloff, was not prejudiced by any delay by the Plaintiff, Egil Stigum, to enforce his rights in Note I or Note II.
14. The doctrine of laches is an equitable defense that bars a person from enforcing his or her rights when, by delaying the enforcement of those rights for an unreasonable period of time, he or she prejudiced the party against whom he or she seeks to enforce those rights. G.E.B. v. S.R.W., 422 Mass. 158 (1996); Three Sons, Inc. v. Phoenix Ins. Co., 397 Mass. 271, 257 N.E.2d 774 (1970).
15. The doctrine of laches is a defense to a claim that is equitable in nature, and is not available as a defense to a legal claim, such as an action on a promissory note. Srebnick v. Lo-Law Transit Mgt., Inc., 29 Mass. App. Ct. 45 (1990).
16. The evidence warrants a finding for the Plaintiff that the Statute of Limitations had not expired on Note I by the time that the Plaintiff, Egil Stigum, filed suit on Note 1.
17. As a term note, a cause of action on Note I did not accrue on it until the day after Note I matured. Mass. Gen. L. ch. 106, §3-122(1) (a);Krasnow v. Krasnow, 253 Mass. 928, 149 N.E. 321 (1925); see also Estes v. Tower, 102 Mass. 65, 66-67 (1869).
18. Even if the statute of limitations had expired on Note II by the time that the Plaintiff, Egil Stigum, filed suit on it, he may still use it to set-off any amounts that he owes the Defendant, Robert Skloff. See Mulligan v. Hilton, 305 Mass. 5, 24 N.E.2d 676 (1940); Castaline v. Swardlick, 264 Mass. 481, 163 N.E. 62 (1928).
19. The defense of Mitigation of Damages does not apply when a maker of a promissory note fails to pay the note, and interest thereby accrues on the unpaid amounts. See Restatement (Second) of Contracts, §350, passim.
20. The evidence warrants a finding for the Plaintiff that the Plaintiff, Egil Stigum, never intentionally relinquished any known rights of his.
21. Waiver is the intentional relinquishment of a known right. Rose v. Regan, 344 Mass. 223, 181 N.E.2d 796 (1962).
22. The evidence warrants a finding for the Plaintiff that any amounts paid by the Defendant, Robert Skloff, to third-parties are not payments made to satisfy, in whole or in part, Note I or Note II.
23. If the Plaintiff, Egil Stigum, is liable to the Defendant, Robert Skloff, for any amounts paid by the Defendant to third-parties, the evidence warrants a finding for the Plaintiff that any such amounts are more than off-set by additional monies that the Defendant owes to the Plaintiff.
24. Sums paid by the maker of a note to a third party do not satisfy, in whole or in part, the maker’s indebtedness on the note to the note’s holder. Mass. Gen. L. Ann. ch. 106, §3-603(1).
25. Mass. Gen. L. ch. 231, §6F is not a defense to a claim, but merely provides remedies to a defendant against whom a frivolous claim has been brought. See Mass. Gen. L. ch. 231, §6F.
26. The evidence warrants a finding for the Plaintiff that the Plaintiff, Egil Stigum, never promised to the Defendant, Robert Skloff, that the Defendant would be removed from his liability on a promissory note made payable to the Bank of New England if the Defendant signed Note I or Note II.
27. The evidence warrants a finding for the Plaintiff that the Plaintiff, Egil *70 Stigum, never told the Defendant, Robert Skloff, that the Defendant had been removed from his liability on a promissory note made payable to the Bank of New England.
28. The evidence warrants a finding for the Plaintiff that the Plaintiff, Egil Stigum, cannot be equitably estopped from enforcing Note I or Note II against the Defendant, Robert Skloff.
29. For equitable estoppel to apply, the Defendant must show that (1) the Plaintiff made a representation intended to induce a course of conduct on the part of the Defendant; (2) the Defendant acted or failed to act as a result of that representation; and (3) the Defendant was harmed as a result of his act or failure to act. Industrial Bankers of Massachusetts v. Reid, 297 Mass. 119, 8 N.E.2d 19 (1937).
30. The doctrine of equitable estoppel is a defense to a claim that is equitable in nature, and is not available as a defense to a legal claim, such as an action on a promissory note. See Srebnick v. Lo-Law Transit Mgmt., Inc., 29 Mass. App. Ct. 45 (1990).
31. In order to plead the defense of fraud in his Answer, the Defendant must have stated the circumstances that constituted fraud with particularity. Mass. R. Civ. P. 9(b).
32. By failing to state in his Answer what alleged false representation or representations that the Plaintiff made to the Defendant; how such representations were misleading; and how such representations caused the Defendant to act to his detriment; the Defendant may not raise the defense of fraud. Schinkel v. Maxi-Holding, Inc., 30 Mass. App. Ct. 41 (1991); Nichols v. Rogers, 139 Mass. 1465, 29 N.E. 377; VMS Realty Investment, Ltd. v. Keezer, 34 Mass. App. Ct. 119 (1993).
33. Fraud is never presumed, but must be affirmatively proved by the party who relies upon the allegation of fraud. Gedart v. Ejdrygiewicz, 309 Mass. 224, 25 N.E.2d 371 (1940).
34. The evidence warrants a finding for the Plaintiff that the Plaintiff, Egil Stigum, never made a false representation or representations to the Defendant, Robert Skloff, to induce the Defendant to sign Note I or Note II.
35. To prove fraud as a defense, the Defendant must show that (1) the Plaintiff made a misrepresentation as to a matter of fact; or a misrepresentation of belief or intention if the belief of intention were not entertained by the Plaintiff when he made the statement; (2) that the Plaintiff made the misrepresentation with the intention to induce the Plaintiff to act on it; (3) that the Plaintiff knew the misrepresentation was untrue; (4) that the Defendant acted on the misrepresentation; and (5) the Defendant was harmed as a result. Graphic Arts Finishers, Inc. v. Boston Redevelopment Authority, 357 Mass. 40, 255 N.E.2d 793 (1970); Feldman v. Witmark, 254 Mass. 480, 150 N.E. 329 (1926); Alpine v. Friend Bros., 244 Mass. 164, 138 N.E. 553 (1923).
36. The evidence warrants a finding for the Plaintiff that the Plaintiff, Egil Stigum, did not breach any implied covenant of good faith and fair dealing that he may have owed to the Defendant, Robert Skloff.
37. The doctrine of good faith, does not create a separate duty of fairness and reasonableness which can be independently breached. Mass. Gen. L. Ann. ch. 106, §1-203, Uniform Commercial Code Comment (West. Supp. 1997).
38. Good faith means honesty in fact in the conduct or transaction concerned. Mass. Gen. L. Ann. ch. 106, §1-201(19) (West 1990).
39. The evidence warrants a finding for the Plaintiff that the Plaintiff, Egil Stigum, did not breach any duty of care that he may have owed to the Defendant, Robert Skloff.
40. The Parole Evidence Rule bars evidence of a prior or contemporaneous oral or written agreement which contradicts or supplements a completely integrated agreement such as a promissory note. L. W. Severance & Sons, Inc. v. Angley, 332 *71 Mass. 432, 439, 125 N.E.2d 415, 420 (1955).
41. Pursuant to 11 U.S.C. §544 (c), Note I and Note II reverted to the Plaintiff, Egil Stigum, from his bankruptcy estate after his bankruptcy case was closed. 11 U.S.C. §544(c).
42. The owner of an asset that is property of the bankruptcy estate is competent to value the asset.
43. The owner of the asset that is property of a bankruptcy estate values the asset at the time the bankruptcy proceedings are commenced.
44. Under the law of set-off, the plaintiff was entitled to set off any funds received by Mass. Mutual for Mr. Skloff against the amounts owed on Note I.
Egil Stigum
By his Attorneys,
George F. Parker, III BBO No. 389600 R. Christopher Green, Esquire BBO# 635012
Badger, Dolan, Parker & Cohen Two Oliver Street Boston, MA 02109 (617) 482-3030
Dated: March 9,1998
Appendix B
COMMONWEALTH OF MASSACHUSETTS ■ SUFFOLK, SS. BOSTON MUNICIPAL COURT DEPT. CIVIL ACTION NO. 238741

■k-kick-k-kickifk-k-kifkick-k-k-k-kickickifkickidckicick

EGIL STIGUM, Plaintiff
MEMORANDUM OF DECISION AND ORDER AND COURTS RESPONSE TO PLAINTIFFS REQUESTS FOR RULINGS OF LAW
ROBERT SKLOFF, Defendant
**********************************
This is an action to recover amounts allegedly due and owed on a promissory note held by the plaintiff, Egil Stigum (“Stigum”) from the maker, defendant, Robert Skloff (“Skloff’).[1]
In 1987, Stigum, Skloff, and Robert Todd (‘Todd”) formed a partnership and obtained a $50,000 promissory note from the Bank of New England (“Bank Note”). Approximately $33,000 of the funds were given to Stigum as payment for his initial investment in the partnership, the remainder was allocated for business expenses. Upon Skloffs departure from the partnership in 1989, he requested removal from the Bank Note. Stigum and Todd represented to the defendant that he would be removed from the Bank Note if a new note was executed for the defendant’s share of the Bank Note debt. In reliance on Stigum and Todd’s representations, the defendant signed a three year promissory note payable “to the order of Stigum & Todd” for $36,286 62 plus interest (“S&T Note”). Skloff made no payments on the note. Stigum later credited monies earned by Skloff against *72 the amount due on the note. Stigum and Todd declared bankruptcy, ultimately leaving Skloff solely responsible for the Bank Note. On March 15,1996, in a bulk transaction, Todd assigned to Stigum, all of his “right, title and interest in and to the assets” of the partnership, including his interest in the S&T Note. Thus, Stigum was not a holder in due course. At the time of trial, Stigum’s bankruptcy case was closed and he sought to enforce the S&T Note against Skloff.
When Todd transferred his partnership interests to Stigum, he did not indorse the S&T Note. Instead, Todd signed a document titled “Assignment of All Interest.” This document, which made a bulk transfer of Todd’s partnership interest, was not tantamount to an indorsement of the S&T Note since it was not “so firmly affixed thereto as to become a part thereof.” See G.L.c. 106, §3-202(2); Duxbury v. Roberts, 388 Mass. 385 (1983). Thus, to enforce the S&T Note, both Stigum and Todd must both join in the action. G.L.c. 106, §3-116 (b). In this action, Stigum seeks to enforce the note alone.
In addition, the defendant asserts the statue of limitations expired because he was in default one month after the S&T Note was signed, on November 1, 1989. The credits made by the plaintiff do not remedy the fact that there was a default on the note.
Notwithstanding the plaintiffs inability to enforce the note by this action, the defendant asserts affirmative defenses warranting a decision in his favor. The evidence, as provided, demonstrates that the S&T Note fails for lack of consideration. In addition, material misrepresentations were made by the plaintiff for the purpose of inducing the defendant to sign the S&T Note, which the plaintiff now seeks to enforce.
For all the foregoing reasons, the court finds in favor of the defendant. Accordingly, Defendant’s Motion for Involuntary Dismissal and/or Directed Verdict is Denied.
COURT’S RESPONSE TO PLAINTIFF’S REQUESTS FOR RULINGS OF LAW
Plaintiff filed forty-four (44) requests for rulings of law. All forty-four requests are denied because they are “unreasonably excessive” in number and the court is not required to select and rule upon particular requests for rulings. See Stella v. Curtis, 348 Mass. 458 (1965); Goldman v. Ashkins, 266 Mass. 374 (1929); Green v. Blue Cross and Blue Shield of Massachusetts, 1996 Mass. App. Div. 169.
Dated: March . 1998
Peter Donovan Associate Justice

 In relevant part, the referenced Mass. R. Civ. P, Rule 52(a), reads as follows:
“(a) Courts Other than District Court: Effect. In all actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses....” (Emphasis added).

 In its entirety, the referenced Mass. R. Civ. R, Rule 52(c), reads as follows: “
(c) District Court: Effect. In all actions tried upon the facts without a jury, except as otherwise provided in Rule 65.3, the court may find the facts specially and state separately its conclusions of law thereon. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.” (Emphasis added).
Mass. R. Civ. P., Rule 52 (d), also applies to the BMC and District Courts, but it concerns amendments to findings, not an issue in this case.

 We may find the rare exception if the judge’s writing reflects such substantial error that manifest injustice would otherwise result. Compare, e.g., G.L.c. 249, §4 (allows actions in the nature of certiorari to be brought in the supreme judicial court or the superior court to correct substantial errors in proceedings affecting material rights that “are not otherwise reviewable by motion or by appeal...”)

 Plaintiffs claim for amounts due and owed on a second note was dismissed via a motion for summary judgment, pursuant to Mass. R. Civ. P, Rule 56(c).